UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEAN K. CONQUISTADOR    *Plaintiff*, | ) CASE NO. 20-cv-01658 (KAD) ) ) |
| v. | ) ) |
| GEORGE HURDLE, BLEKIS, & KENNEDY    *Defendants*. | ) DECEMBER 20, 2022 ) ) |

### MEMORANDUM OF DECISION
### RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 74)

Kari A. Dooley, United States District Judge:

Plaintiff Jean K. Conquistador ("Plaintiff") commenced this civil rights action asserting claims arising out of an incident that occurred while he was incarcerated at Garner Correctional Institution ("Garner") against three Department of Correction employees: Correctional Captain Hurdle and Correctional Officers Blekis and Kennedy. Following initial review, the Court permitted three claims for damages against the Defendants in their individual capacities to proceed: a First Amendment retaliation claim against all three Defendants, a failure to intervene claim against Defendant Hurdle, and an Eighth Amendment excessive force claim against Defendants Kennedy and Blekis. *See* Recommended Ruling at 10, ECF No. 8, *adopted by* Order, ECF No. 15. The Defendants seek summary judgment on all claims, alleging that the record evidence clearly demonstrates that no excessive force or otherwise improper action was taken against Plaintiff. Alternatively, Defendants argue that their actions are protected by qualified immunity. For the following reasons, the motion for summary judgment is GRANTED.

**STANDARD OF REVIEW**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation," but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's papers "liberally" and "interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quotation marks omitted), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**FACTS**[1]

Plaintiff was a sentenced prisoner housed at Garner from February 13, 2019 until August 30, 2019. Defs.' SOF ¶¶ 1–2. In August 2019, Defendant Hurdle was a Correctional Captain assigned to Garner and Defendants Blekis and Kennedy were Correctional Officers assigned to Garner. *Id.* ¶ 3. Plaintiff describes himself as being "known as a grievance and litigious person . . . particularly in a prison environment." *Id.* ¶ 27; Defs.' Ex. A. ("Conquistador Dep."), at 107:1–3, ECF No. 74-4. He claims that he filed numerous grievances against Captain Hurdle prior to August 2019 about "all kinds of stuff," however he did not file any lawsuits against Captain Hurdle prior to August 2019. Defs.' SOF ¶¶ 25, 28. He similarly alleges that he threatened to sue Officer Blekis and that "[Officer] Kennedy was aware of potential litigation," but that he likewise did not file any suits against either officer prior to August 2019. *Id.* ¶ 26.

---

[1] The facts are taken from the Defendants' Local Rule 56(a) Statement and supporting exhibits. *See* Defs.' Statement of Material Facts ("Defs.' SOF"), ECF No. 74-2. Local Rule 56(a)2 requires the party opposing summary judgment to submit a statement containing separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

Plaintiff is well aware of his obligation to respond to the Defendants' motion for summary judgment and has accordingly sought multiple extensions of time to file a response since January 20, 2022, with the most recent deadline expiring on June 15, 2022. Although the Court denied Plaintiff's July 5, 2022 request for an extension of time to respond until an undetermined date, the Court indicated in its denial that it would still consider Plaintiff's response if he filed it "before Defendants' motion for summary judgment is fully considered." *See* Order Denying Mot. for Extension of Time at 4, ECF No. 94. To date, Plaintiff has not filed a response. Accordingly, the Defendants' facts are deemed admitted to the extent that they are supported by the record. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

3

On August 27, 2019,[2] mental health staff at Garner placed Plaintiff on Behavioral Observation Status ("BOS")[3] and informed Captain Hurdle that Plaintiff would need to be transferred from his current cell to a new cell located closer to the correctional officers' bubble. *Id.* ¶ 8. Officers Kennedy and Blekis escorted Plaintiff to his new cell while Correctional Captain Hurdle supervised the escort and placement. *Id.* ¶¶ 5, 9. The entirety of the escort and placement was recorded by a handheld camera. *Id.* ¶ 10.

The escort began at approximately 3:49 PM. *Id.* ¶ 11. During the escort, Plaintiff was restrained in handcuffs and Officer Kennedy secured his left side while Officer Blekis secured his right side. *Id.* ¶ 12. Each Officer secured Plaintiff by holding Plaintiff's wrist with one hand and his upper arm with their other hand. Video at 00:45–01:30. At no point during the approximately forty-five-second escort to the new cell does Plaintiff make any audible complaints of discomfort or appear to be in pain. *Id.*

Once they arrived at the new cell, the officers conducted a strip search of Plaintiff. Defs.' SOF ¶ 16. Approximately ten seconds into the search, Plaintiff became noncompliant: refusing to squat down as directed and prompting an officer to order him to "stop!" Video at 01:45. He then attempted to climb onto the bed, stating "nah, nah, we're not doing this, we're not doing this," and Officers Blekis and Kennedy lifted him off of the bed to continue the search. *Id.* at 01:48. A non-

---

[2] Plaintiff's Complaint states that the relevant events took place "[o]n or about August 13, 2019." Compl. ¶ 1. However, Defendants state that there was only one occasion in August 2019 on which all three Defendants escorted the Plaintiff together: August 27, 2019. Defs.' SOF ¶ 7. Plaintiff agreed during his deposition that there was only one occasion in August 2019 that all three Defendants escorted him. Conquistador Dep., at 62:13–63:05. In video footage of the August 2019 escort, the officer filming the video identifies the date as August 27th. Defs.' Ex. C ("Video"), at 00:04–00:06, ECF No. 74-6. Likewise, a medical incident report for Plaintiff notes that Plaintiff was escorted to a new cell and placed on BOS on August 27, 2019. *See* Defs.' Ex. D, ECF No. 75. Plaintiff provides no evidence indicating that the search occurred on August 13th, and given the substantial evidence suggesting that the escort took place on August 27, 2019, the Court construes Plaintiff's Complaint as challenging the events that occurred on that date.

[3] According to Defendants' Local Rule 56(a)1 statement, "Behavioral Observation Status is an intervention, determined by a qualified mental health professional, to extinguish maladaptive behaviors, including threats of suicide or self-harm, while maintaining safety and security of the inmate." Defs.' SOF at 2 n.2.

party officer arrived to assist with the search while Plaintiff continued to shout at and taunt the officers. *Id.* at 01:50–02:03. The non-party officer asked Plaintiff to lift his leg, and Plaintiff responded "I ain't picking up shit." *Id.* at 02:04.

Officers Kennedy and Blekis then secured Plaintiff and moved him to allow the non-party officer to lift Plaintiff's legs and complete the search. Defs.' SOF ¶ 17. While the officer completes the search, Plaintiff states, "why you twisting my wrists? Why you twisting my wrists?" and "that's excessive force," and then yells out in apparent pain for approximately two to three seconds. Video at 02:10–02:23. At that time, Officer Kennedy's hands were on Plaintiff's upper arm and upper back, while Officer Blekis had one hand on Plaintiff's upper back and his other hand on or near Plaintiff's wrists. *Id.* at 02:10–02:23. Plaintiff then immediately returned to his prior demeanor, continuing to shout at the officers. *Id.* at 02:23–02:30.

At approximately 3:55 PM that same day, Plaintiff was assessed by medical staff who noted no apparent injury and no swelling, bruising or alteration to Plaintiff's wrists. Defs.' SOF ¶ 23. He did not require any medical treatment for his wrists. *Id.* ¶ 23. And although his wrists temporarily hurt after the incident, he stated that his wrists are "fine," and he suffered no scarring or lasting injuries. *Id.* ¶ 22.

On November 3, 2020, Plaintiff filed the instant action against Officers Kennedy and Blekis and Captain Hurdle. Compl., ECF No. 1. Defendants moved for summary judgment on January 15, 2022.

**DISCUSSION**

Plaintiff's Complaint makes three claims: 1) an Eighth Amendment excessive force claim against Officers Blekis and Kennedy, 2) an Eighth Amendment failure to intervene claim against Captain Hurdle, and 3) a First Amendment retaliation claim against all three Defendants.

Defendants argue that the undisputed factual record clearly negates all of Plaintiff's constitutional claims. Defs.' Mem. in Supp. at 1–2, ECF No. 74-1. Moreover, they argue that even if Plaintiff could establish a genuine issue of material fact as to his constitutional claims, they are entitled to qualified immunity as to those claims. *Id.* at 2.

***Excessive Force***

As the core of his Complaint, Plaintiff alleges that Officers Blekis and Kennedy used excessive force against him by "ceaselessly, and wickedly twisting [his] wrists" when he was being placed on BOS, in violation of the Eighth Amendment. Compl. ¶¶ 2, 8.[4]

To prevail on an Eighth Amendment claim for the use of excessive force by a prison official, a prisoner bears the burden of establishing both an objective and subjective component to the claim. *See Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Under the objective component, a prisoner must show that the prison official's "conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (quotations omitted). The inquiry is context specific and "turn[s] upon 'contemporary standards of decency.'" *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999)). "[W]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016) (quoting *Blyden*, 186 F.3d at 263). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of

---

[4] The Court references Plaintiff's Complaint for the purposes of identifying Plaintiff's allegations, but any factual allegations made therein will not be considered in evaluating Defendants' motion for summary judgment because the Complaint is not verified. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes . . . ."). Although the Complaint includes a section labeled "Verification," which states: "Plaintiff Jean Karlo Conquistador hereby verifies that the foregoing is to and correct to the best of his ability," Compl. at 4, to be considered as an affidavit, the unsworn statement must be made under penalty of perjury. *See* 28 U.S.C. § 1746. Because Plaintiff's verification does not include that it is made under penalty of perjury, Plaintiff's Complaint is not a verified complaint and Plaintiff's allegations are insufficient to counter Defendants' evidence offered in support of the motion.

6

action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Although "[t]he extent of the inmate's injuries as a result of the defendant's conduct is not a factor in determining the objective component," *Williams v. Paxton*, No. 3:21CV966 (VLB), 2021 WL 5889271, at *4 (D. Conn. Dec. 13, 2021), "injury (or lack thereof) may be relevant to the inquiry of whether excessive force was used," *Gawlik v. Semple*, No. 3:20-CV-564 (SRU), 2021 WL 4430601, at *9 (D. Conn. Sept. 27, 2021) (citing *Wilkins*, 559 U.S. at 38). A prisoner therefore need not show that he suffered a significant injury to state a claim for use of excessive force. *See Wilkins*, 559 U.S. at 34 ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." (quoting *Hudson*, 503 U.S. at 4)). However, a *de minimis* use of force will rarely be sufficient to satisfy the objective component unless the force used is also "repugnant to the conscience of mankind." *Id.* at 38. Thus, "an inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (quotations omitted).

To satisfy the subjective component of the excessive force standard, a prisoner must allege that the prison official "acted with a subjectively sufficiently culpable state of mind," by showing that the official acted with "wantonness in light of the particular circumstances surrounding the challenged conduct." *Harris*, 818 F.3d at 63 (quotations omitted). The core inquiry in making such a determination "is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003)). The extent of the inmate's injuries is one factor courts consider in determining whether correctional staff could have, in good faith, believed the force used was necessary under the circumstances. *Hudson*, 503 U.S. at 7. Other factors include "the need for

7

application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (quotations omitted).

Plaintiff alleges that, at an unspecified time during his placement in the BOS cell, Defendants Blekis and Kennedy twisted his wrists with excessive force in an attempt get him to yell out or physically respond. Compl. ¶ 2. Defendants argue that they did not use excessive force at any point during Plaintiff's escort and placement in the BOS cell and that any force used was *de minimis*. Defs.' Mem. in Supp. at 12. Based on the evidence submitted by Defendants, and particularly the uncontradicted video footage of the escort and placement, the Court agrees with Defendants.

Plaintiff does not identify in his complaint the point at which the Officers allegedly used excessive force, aside from calling the use of force "ceaseless[]." Compl. ¶ 2. However, the video footage clearly demonstrates that no defendant used excessive force during Plaintiff's transport from one cell to the other. *See* Video at 00:45–01:35. Officers Blekis and Kennedy can be seen throughout the escort holding one hand on Plaintiff's handcuffs and one hand on each of Plaintiff's upper arms, and at no point is any conduct resembling excessive force, or even the use of any force, visible. *Id.* Plaintiff does not exhibit any signs of discomfort or pain at any point during the escort. *Id.* Based on the clear and uncontradicted video footage, coupled with the absence of any contrary evidence by Plaintiff, no reasonable factfinder could find that excessive force was used during the escort to the new cell.[5]

---

[5] *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Likewise, no reasonable factfinder could find that excessive force was used by any defendant during the strip search which occurred in the new cell. Plaintiff alleges that he was "compliant with placement on BOS" and that Officers Blekis and Kennedy nonetheless twisted his wrists unnecessarily. Compl. ¶ 6. However, the undisputed video evidence reveals a very different reality. Plaintiff was noncompliant during the search and repeatedly refused to follow the officers' orders, including stating "I ain't picking up shit" when asked to lift his leg so the search could be completed. Video at 01:45–02:07. It was only after this noncompliance that Officers Kennedy and Blekis secured Plaintiff so the non-party officer could lift Plaintiff's leg, and only then did Plaintiff voice complaints regarding his wrists being twisted.

The video makes manifest that the Officers were not maliciously using force to cause harm as Plaintiff alleges but were restraining him so that the necessary search could be completed. In fact, the video footage belies Plaintiff's allegations. Although it is difficult to view precisely where the Defendants' hands were located in the three-second period when Plaintiff complains that his wrists are being twisted, it is clear that Officer Kennedy has both of his hands on Plaintiff's upper arm and back (and so could not have been twisting Plaintiff's wrists), and Officer Blekis has one hand on Plaintiff's back and the other on or near Plaintiff's wrist (though no effort to twist the Plaintiff's wrist is observed). *See id.* at 2:10–2:18.

The lack of any lasting injury to Plaintiff further supports the fact that no excessive force was used. Although Plaintiff stated in his deposition that his wrists hurt immediately after the incident, he also stated that his wrists are "fine" and that he suffers no lasting injury or scarring from the incident. Conquistador Dep., at 79:07–20. Moreover, medical staff observed no signs of injury, swelling, or bruising when they evaluated Plaintiff only minutes after the incident. Defs.' SOF ¶ 23. Although Plaintiff need not show that he suffered a significant injury to state an

excessive force claim, the lack of any noticeable injury whatsoever suggests that the use of force by Defendants was, at most, *de minimis*. Such a minor infliction of pain, lasting only two to three seconds and resulting in no lasting injury, used against a noncompliant prisoner during a routine strip search, is insufficient to satisfy the objective component of the excessive force standard. *See Wilkins*, 559 U.S. at 37. No reasonable factfinder could conclude otherwise.

Defendants have also established that there is no genuine issue of material fact as to whether the Defendants "acted with a subjectively sufficiently culpable state of mind," under the circumstances. *See Harris*, 818 F.3d at 63 (quotation omitted). Plaintiff avers in his unverified Complaint that Officers Kennedy and Blekis twisted his wrists "wickedly" and "malicious[ly]" in an attempt to get Plaintiff to yell and physically respond to the force. Compl. ¶¶ 2, 7. However, the video footage clearly reveals that Plaintiff was noncompliant and that the Defendants acted with minimal force in order to restore discipline and complete the search. Plaintiff's noncompliance, lack of lasting injury, and the officers' (at most) *de minimis* use of force support a reasonable inference that the Officers did not act with a subjective intent to cause harm. As Plaintiff has submitted no evidence to counter this inference, he has failed to raise a genuine issue of material fact as to the *mens rea* component of his excessive force claim.

Moreover, the Officers' actions here are protected by qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity will be denied to an official only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See*

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Additionally, "[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (quoting *Higazy v. Templeton*, 505 F.3d 161, 169–70 (2d Cir. 2007)).

As held above, Plaintiff has failed to identify any disputed fact as to his excessive force claims and they fail as a matter of law. However, even if the Defendants' *de minimis* use of force in the context of a routine escort and strip search could rise to the level of a violation of the Eighth Amendment right against cruel and unusual punishment, existing case law has not clearly established as much.

A right is "clearly established" if, at the time of the challenged conduct, it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Here, reasonable prison officials would believe that securing a noncompliant prisoner for a period of seconds to enable the completion of a routine strip search was lawful and would not violate the prisoner's rights. This is particularly true given the existing case law regarding whether the use of *de minimis* force to secure prisoners that results in no—or even minor—injuries rises to the level of a constitutional violation. *See, e.g.*, *Wilkins*, 559 U.S. at 37–38; *Galarza v. Erfe*, No. 3:18-CV-00663 (JAM), 2019 WL 121784, at *4 (D. Conn. Jan. 7, 2019) (finding that a prisoner's allegations that a correctional officer jumped on them and "briefly twisted [their hands] into an awkward position" failed to "give rise to plausible grounds for a claim of excessive force in violation of the Eighth Amendment"); *Braswell v. Corley*, No. 311-CV-1565 (MPS), 2015 WL 575145, at *10 (D. Conn. Feb. 11, 2015) (holding that a pretrial detainee's allegations that "his wrist was twisted while he was resisting the marshals' efforts" to

11

keep him in the courtroom during a hearing were insufficient to maintain an excessive force claim); *Bragdon v. Baccus*, No. 3:20-CV-258 (JAM), 2020 WL 2113606, at *3 (D. Conn. May 4, 2020) (dismissing a prisoner's excessive force claim where the prisoner alleged "some 'irritation and swelling,' without any suggestion of significant pain or that the injury was more than de minimis"). Because neither the Second Circuit nor the Supreme Court have held that a *de minimis* use of force, resulting in no lasting injury, used to secure a noncompliant prisoner for a brief period of time constitutes an Eighth Amendment violation, Officers Blekis and Kennedy are entitled to qualified immunity.

In sum, because Plaintiff has failed to raise a genuine issue of material fact as to the merits of his excessive force claim against Officers Blekis and Kennedy, and as Officers Blekis and Kennedy are protected by qualified immunity in any event, Defendants' motion for summary judgment as to the excessive force claim against Officers Blekis and Kennedy is GRANTED.

***Failure to Intervene***

Plaintiff next alleges that Captain Hurdle failed to intervene when Officers Kennedy and Blekis allegedly twisted his wrists with excessive force. Compl. ¶¶ 5, 8. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). Therefore, a prison official may be liable for another official's use of excessive force under the Eighth Amendment "if he or she was present during the use of force but did not attempt to intervene on behalf of the inmate to stop the use of force." *See Gulley v. Ogando*, No. 3:19-CV-612 (SRU), 2019 WL 2502753, at *4 (D. Conn. June 17, 2019) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)). "If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends." *Feinberg v.*

*City of N.Y.*, No. 99CV12127(RC), 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Thus, "to the extent that there is no valid claim that one [law enforcement] officer violated an individual's rights, there also will be no valid failure to intervene claim arising from that same course of events." *Anderson v. Waterbury Police Dep't*, No. 14-CV-829 (VAB), 2017 WL 1157843, at *13 (D. Conn. Mar. 28, 2017); *see also Baltas v. Rivera*, No. 3:19-CV-1043 (MPS), 2020 WL 6199821, at *15 (D. Conn. Oct. 22, 2020) ("Further, as the plaintiff's excessive force claim fails, there is no basis for his claim that defendant Harris failed to intervene to prevent the use of excessive force.").

As Plaintiff's excessive force claim against Officers Blekis and Kennedy fails as a matter of law, so too does his failure to intervene claim against Captain Hurdle. Defendants' motion for summary judgment on the failure to intervene claim is therefore GRANTED.

*Retaliation*

Plaintiff also asserts a claim against all Defendants for retaliation in violation of the First Amendment. *See* Compl. at 3; Recommended Ruling at 4. Plaintiff does not clearly articulate the grounds for his retaliation claim in his Complaint, however he does allege that he threatened to file civil action against Captain Hurdle on multiple occasions prior to the incident on August 27th, and that he threatened to file civil action against all of the Defendants at the time of the incident. *See* Compl. ¶¶ 3–4. In his deposition, Plaintiff testified that he believed that Defendants were retaliating against him because he is "known as a grievance and litigious person," and that he believes his threats of litigation were a "contributing factor" in the Defendants' actions during the incident. Conquistador Dep., at 107:1–8, 109:16–19, 111:14–24. The Court therefore construes Plaintiff's complaint to allege that Officers Blekis and Kennedy twisted his wrists in retaliation for Plaintiff threatening to sue them during the August 27th incident, and that Captain Hurdle failed

to intervene in retaliation for Plaintiff threatening to sue him and filing grievances against him on prior occasions. Defendants argue that the undisputed record evidence defeats this claim. The Court agrees.

To establish a claim for retaliation, a prisoner must present evidence establishing that: (1) he engaged in protected speech or conduct; (2) the defendant took an adverse action against him; and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015).

Plaintiff alleges that he threatened to file lawsuits against the Defendants, and that those threats of litigation were a "contributing factor" in their allegedly wrongful actions.[6] Conquistador Dep., at 107:1–8, 109:16–19, 111:22–25. The Second Circuit has not yet addressed whether the threat to file a lawsuit is protected speech, and other courts are divided on the question. *See Gibson v. Fischer*, No. 9:10-cv-0968 (LEK/TWD), 2014 WL 7178346, at *16 (N.D.N.Y. Dec. 15, 2014) (noting split of authority and finding issue of fact precluding summary judgment on the issue of whether plaintiff's conduct warranted First Amendment protection) (citing cases). As the Court determines below that Plaintiff's retaliation claims fail for different reasons, the Court need not weigh in on whether the threat of filing a lawsuit is constitutionally protected speech for First Amendment purposes.

Whether conduct by a defendant is adverse depends on the context in which it occurs. "Conduct that is properly initiated, reasonably executed, independently justified and equally administered—regardless of any animosity towards the plaintiff—does not give rise to a

---

[6] Plaintiff alleges in his deposition that Captain Hurdle was also motivated to retaliate against him based on the fact that he has filed "a lot of grievances against" Captain Hurdle. Conquistador Dep., at 111:22–25. However, Plaintiff does not mention filing grievances against Captain Hurdle in his Complaint, and he has submitted no evidence to support a finding that he actually has filed grievances against Captain Hurdle. Therefore, the Court does not consider this allegation here.

14

constitutional claim for retaliat[ion]." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 109 (2d Cir. 2000). In addition, prisoners may be required to tolerate more than public employees or average citizens before an action is considered adverse. *See id.* "[I]n the prison context, [the Second Circuit has] defined 'adverse action' *objectively*, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (emphasis in original) (quotation omitted). The conduct underlying a retaliation claim need not, however, rise to the level of a constitutional violation to be considered adverse action. *See McCarroll v. Matteau*, No. 9:09-CV-0355 (NAM/TWD), 2012 WL 4380156, at *12 (N.D.N.Y. June 15, 2012).

Here, as explained above, the Officers' conduct did not amount to the use of excessive force. Moreover, the Officers' conduct does not constitute adverse action because it was independently justified by Plaintiff's noncompliance during the strip search. The only time in which Plaintiff can be heard complaining of any application of force to his wrists is after he became noncompliant and needed to be secured so that the non-party officer could lift his leg and complete the search. Even then, the Officers used only *de minimis* force to momentarily restrain Plaintiff for a ten-second period while the non-party officer completed the search. *See Zimmerman v. Racette*, No. 9:17-CV-375, 2020 WL 3038275, at *20 (N.D.N.Y. Jan. 24, 2020), *report and recommendation adopted*, No. 9:17-CV-375, 2020 WL 1329138 (N.D.N.Y. Mar. 23, 2020) ("Conduct that is *de minimis* does not provide this deterrent effect and does not give rise to actionable retaliation.").

Finally, there is simply no evidence from which a reasonable factfinder could conclude that the Defendants' conduct was motivated by retaliation. To establish a causal connection for a retaliation claim, the "causal connection must be sufficient to support the inference 'that the speech

15

played a substantial part in the [adverse action].'" *Diesel*, 232 F.3d at 107 (quoting *Ezekwo v. NYC Health & Hosps. Corp.*, 940 F.2d 775, 780–81 (2d Cir. 1991)). In determining whether a causal connection exists, courts will consider factors such as "'any statements made by the defendant concerning his motivation' and 'the temporal proximity between the protected activity and the defendant's adverse action.'" *Alston v. Bellerose*, No. 3:12-CV-00147 (CSH), 2015 WL 4487973, at *8 (D. Conn. July 23, 2015) (quoting *Williams v. Muller*, 98 Civ. 5204(LTS)(AJP), 2001 WL 936297, at *3 (S.D.N.Y. Aug. 17, 2001)). Even where a prisoner can show temporal proximity, the prisoner must also present some further evidence of a retaliatory animus in order to proceed on a retaliation claim. *See Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013); *see also Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) ("[B]ecause prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." (quotations omitted)); *Ayers v. Stewart*, 101 F.3d 687, 1996 WL 346049, at *1 (2d Cir. 1996) ("[Plaintiff's] reliance on circumstantial evidence of retaliation—namely, the proximity of the disciplinary action to his complaint where no misbehavior reports were previously filed against him—does not suffice to defeat summary judgment.").

Plaintiff has presented no evidence in opposition to the motion for summary judgment evincing retaliatory animus by any of the Defendants. Although he avers that he threatened to file suit against Officers Blekis and Kennedy during the escort and strip search, the video footage establishes that Plaintiff did not mention civil action at any point until *after* he complains that the officers twisted his wrists. Thus, although there is temporal proximity between the threats and the allegedly retaliatory action, they are in the wrong chronology: The officers could not possibly have been motivated by retaliatory animus on the basis of these threats, as the threats were not made

until after they used the allegedly excessive force. As Plaintiff offers no evidence of animus on the part of Defendants Blekis and Kennedy, this claim also fails.

As to the claim against Captain Hurdle, Plaintiff alleges that Hurdle retaliated against him because he threatened to file civil action against Hurdle on multiple occasions prior to the August 27th incident. However, Plaintiff offers no evidence of when he made these threats or how they are connected to Captain Hurdle's alleged failure to intervene.[7] Captain Hurdle attests in his affidavit that he was not aware of any pending litigation against him filed by Plaintiff at the time of the incident and that, if he had seen any alleged use of excessive force against Plaintiff, he would have intervened. Defs.' Ex. B ¶¶ 8–9, ECF No. 74-5. As Plaintiff has not submitted any evidence showing a temporal connection or retaliatory motive with respect to Captain Hurdle's conduct, he has failed to raise a genuine issue of material fact so as to defeat summary judgment on this claim as well.

Finally, Plaintiff presents no evidence that any of the Defendants were motivated by his general reputation for litigiousness. It is true that a prisoner may allege a claim for retaliation against a prison official on the basis of a filed lawsuit even where the official was not named in the lawsuit giving rise to the retaliation. *See Johnson v. Naqvi*, No. 3:18-CV-694 (CSH), 2021 WL 1723773, at *10–11 (D. Conn. Apr. 29, 2021) (collecting cases). Courts have even held that a prisoner can maintain a claim for retaliation based on their general reputation for litigiousness. *See, e.g.*, *Alston*, 2015 WL 4487973, at *9 (holding that the plaintiff stated a plausible claim for retaliation because the defendants "were generally aware of Plaintiff's participation in a protected activity"). However, even in such cases, courts have required the prisoner to present evidence of a

---

[7] As the Court has concluded that Captain Hurdle had no obligation to intervene insofar as Officers Blekis and Kennedy did not use excessive force, it is unclear how any conduct by Captain Hurdle could be considered adverse for purposes of the First Amendment retaliation claim. Notwithstanding, as discussed above, the record evidence negates any finding that Captain Hurdle's conduct (adverse or not), was retaliatory in nature.

causal connection between their litigiousness and the adverse action. *See, e.g.*, *id.* at *8 (finding a causal connection between the plaintiff's general reputation for filing grievances and the defendants' adverse actions where the plaintiff presented evidence that the defendants made numerous comments regarding his litigiousness and threatened him based on his litigious reputation); *Johnson*, 2021 WL 1723773, at *9 (finding an "apparent nexus between the content of the alleged comment [made by the defendant] and the [adverse action] itself—'since you like to file lawsuits you [are] getting strip searched to[o]'").

As discussed above, Plaintiff has presented no evidence that any of the Defendants were aware of or motivated by his general character for litigiousness at the prison. Defendants made no mention of his allegedly litigious character, or of any particular grievances or civil actions filed by Plaintiff during the escort and placement. Furthermore, Defendants were independently motivated to use some level of force to secure Plaintiff given his placement on BOS and his noncompliance during the search.

For all of these reasons, Plaintiff has failed to raise a genuine issue of material fact as to his First Amendment retaliation claims against all three Defendants. The motion for summary judgment as to these claims is therefore GRANTED.

**CONCLUSION**

Defendants' motion for summary judgment, ECF No. 74, is **GRANTED** as to all remaining claims raised in the Complaint. The Clerk of the Court is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 20th day of December 2022.

                                                */s/ Kari A. Dooley*
                                                KARI A. DOOLEY
                                                UNITED STATES DISTRICT JUDGE